The UNITED STATES of America

v.

Charles E. HICKEY.

Cr. No. 22205.

United States District Court
E. D. Pennsylvania.

Dec. 9, 1965.

Drew J. T. O'Keefe, U. S. Atty., Joseph P. Braig, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Melvin Dildine, Herman I. Pollock, Philadelphia, Pa. (Defender Association of Phila.), for defendant.

CLARY, Chief Judge.

This is a motion for a new trial brought by the defendant Charles E. Hickey. The relevant facts are as follows:

At or about 3 o'clock in the morning of June 1, 1965, two police officers found defendant lying drunk in an alleyway in the vicinity of 48th and Pine Streets, Philadelphia. After the officers wakened the defendant, it became evident from his actions that he was still stuporous. He was immediately arrested for public intoxication. When asked for identification, the defendant handed one of the officers a wallet containing some cancelled checks and identification cards with various names on them, all involved in different counts of the present indictment. The officers then searched him and found another wallet with identification confirming what he had claimed to be his true name. After taking the defendant to the police station at 55th and Pine Streets, the officers attempted to interrogate him, but decided that he was too drunk to answer. At about this same time he was booked for intoxication. After being allowed to sleep in a cell for a few hours, the defendant was interrogated at 8:30 A.M. by a detective without the presence of counsel and without being advised of his relevant constitutional rights. At that time, he admitted stealing the checks involved in this indictment (Record, 34–35). The defendant was then turned over to the federal authorities at about 10 A.M., at which time he said to them, "I know when you have me. I don't give you

people any trouble" (Record, 35).[1] After being fully advised of his constitutional rights, (Record, 32), the defendant gave the postal inspectors a written confession at about 11 A.M. Around noon he was given a hearing before the United States Commissioner. It has been admitted by the defense that there is no evidence that the Philadelphia police at any time mentioned the confession given by the defendant to them to the postal inspectors (Record, 38).

Hickey was subsequently indicted on seven counts of theft of mail and was tried before this Court on September 16, 1965. He made a preliminary motion to suppress all the evidence contained in his wallet, and also objected at trial to the admission of any confessions or any evidence flowing from the confessions. Both objections were overruled and defendant was found guilty on all seven counts. The only point seriously argued in the present motion for new trial is that the Court erred in overruling the above-mentioned objections.

### I.

The first question raised by this motion is whether tangible evidence obtained from defendant's wallet (voluntarily given to the police officers) immediately after his arrest was properly admissible. The Court cannot agree with the contention that such evidence was the product of an unreasonable search and seizure. Upon being asked for identification, defendant voluntarily gave a wallet to the officers. Such consent alone is enough to justify a search of the wallet by the police, and the issue of consent is a question of fact to be determined by the trial judge. United States

v. Mitchell, 322 U.S. 65, 69, 64 S.Ct. 896, 88 L.Ed. 1140 (1944); United States v. Page, 203 F.2d 81, 83 (9 Cir. 1962); United States v. Ziemer, 291 F.2d 100 (7 Cir. 1961), cert. denied, 368 U.S. 877, 82 S.Ct. 120, 7 L.Ed.2d 78 (1961). The fact that the defendant was voluntarily intoxicated at the time of his arrest can in no way negate this consent.

Even if the defendant had not voluntarily relinquished his wallet, its search by the police would be justified as incidental to the valid arrest for intoxication. It is firmly established that arresting officers may conduct a search without a warrant in order to seize weapons and prevent the destruction of evidence of a crime. Preston v. United States, 376 U.S. 364, 367, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964); United States v. Rabinowitz, 339 U.S. 56, 61, 70 S.Ct. 430, 94 L.Ed. 653 (1950); Agnello v. United States, 269 U.S. 20, 30, 46 S.Ct. 4, 70 L.Ed. 145 (1925). Likewise, it is not only the right but also the duty of an arresting officer to search the defendant, if necessary, to determine his true identity. In the present case, Hickey was so drunk that it was impossible for the police to be certain that he had even given to them his correct name and address.

The defendant cannot object on the grounds that in a search incident to an arrest for intoxication, evidence of a greater offense was uncovered.[2] The right to search applies to arrests for misdemeanors as well as those for felonies. Davis v. United States, 328 U.S. 582, 592, 66 S.Ct. 1256, 90 L.Ed. 1453 (1946). If, in the course of a search, evidence of crimes other than that for

---

1. Court records indicate that between February 25, 1948 and September 11, 1963, defendant Hickey was convicted in this Court on five different occasions on identical or related offenses, and has served jail sentences imposed by Judges Ganey (on two occasions), Clary, Egan, and Freedman, of varying terms. He was last released from jail on October 20, 1964 and the present offenses, which occurred in the first five months of 1965, resulted in the present indictment. These

facts, however, have not been taken into consideration in considering the present problem.

2. The case of White v. United States, 106 U.S.App.D.C. 246, 271 F.2d 829 (D.C.Cir. 1959), cited by the defense, is clearly distinguishable from the present situation. In White, the Court specifically stated that "the arrest for vagrancy was incidental to the search, rather than the converse." Id. at 831.

which the defendant was arrested is discovered, that evidence may also be seized. Harris v. United States, 331 U.S. 145, 155, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947); United States v. Lee, 308 F.2d 715 (4 Cir. 1962), cert. denied, 372 U.S. 907, 83 S.Ct. 720, 9 L.Ed.2d 717 (1963). Therefore, it is clear that no rights of the defendant were impinged by the seizure and admission into evidence of the contents of the wallet which he handed to the police.

## II.

The second ground urged by the defendant on behalf of his motion for a new trial is that the Court erred in admitting into evidence any confessions or any evidence flowing from these confessions. Since only the statement to the postal authorities was considered by the Court in making its decision, only the admissibility of this confession need be considered. This admission was given within an hour after the defendant was carefully advised of his constitutional rights. There is no evidence of any intimidation or coercion, and no rights of the defendant were infringed by the voluntary giving of this confession. The circumstances here are clearly distinguishable from those in Escobedo v. Illinois, 378 U.S. 478, 490–491, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) and United States ex rel. Russo v. New Jersey, 351 F.2d 429, 433 (3 Cir. 1965) where the Courts held confessions inadmissible which were given without the accused having either the presence of counsel or advice by the police concerning his constitutional rights. The facts here involved are analogous to those in Long v. United States, 119 U.S.App.D.C. 209, 338 F.2d 549 (1964). Long had spontaneously admitted his guilt upon seeing police officers before they could even identify themselves. After being advised of his constitutional right to remain silent, Long reiterated and expanded his confession. The Court admitted the statements, and refused to promulgate a blanket rule that any con-

fession made without counsel being present is inadmissible.

Defendant seems willing to admit the propriety of this later confession standing alone. He claims, however, that the admission made to the Philadelphia police at 8:30 A.M. was unconstitutionally procured and that it taints the later confession as the fruit of the poisonous tree. It is not necessary for us to decide whether there was a fatal defect in the first admission. Even if there were, it could not affect the admissibility of the later statement. The postal authorities would have been called into the case solely on the basis of the unexplained presence of the checks in the defendant's wallet. Moreover, it has been stipulated that the city police did not hand over this original confession to the federal investigators (Record, 38).

It is argued, however, that the psychological process set in motion by the initial admission was irreversible, and that the character of Hickey's first confession must control the admissibility of the later statement. This is clearly not the law. It is true that where a confession is secured by actual physical or psychological coercion, the intimidation or fear caused by this coercion may continue to lurk in the defendant's mind and destroy the validity of a later confession. Leyra v. Denno, 347 U.S. 556, 74 S.Ct. 716, 98 L.Ed. 948 (1954); Lyons v. Oklahoma, 322 U.S. 596, 64 S.Ct. 1208, 88 L.Ed. 1481 (1944). In such cases, the later confession may well become the "fruit of the poisonous tree." See Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939); Silverthorne Lumber Co. v. United States, 251 U.S. 385, 392, 40 S.Ct. 182, 64 L.Ed. 319, 24 A.L.R. 1426 (1920). However, the Courts have refused to extend this doctrine to cases wherein the defendant has confessed twice, once before and once after he has been advised of his rights. United States v. Bayer, 331 U.S. 532, 67 S.Ct. 1394, 91 L.Ed. 1654 (1947); Goldsmith v. United States, 107 U.S.App.D.C. 305, 277 F.2d 335 (1960), cert. denied,

364 U.S. 863, 81 S.Ct. 106, 5 L.Ed.2d 86 (1960); Castle v. United States, 287 F.2d 657, 662 (5 Cir. 1961), reversed on other grounds, 368 U.S. 13, 82 S.Ct. 123, 7 L.Ed.2d 75 (1961). A confession is not rendered inadmissible solely because an earlier one was made without the defendant first being advised of his rights. The failure to inform him of his right to counsel is not irremediable; and once forewarned and cognizant of his rights, he has only his conscience with which he must contend. The Supreme Court in Bayer stated that:

> "Of course, after an accused has once let the cat out of the bag by confessing, no matter what the inducement, he is never thereafter free of the psychological and practical disadvantages of having confessed. He can never get the cat back in the bag. The secret is out for good. In such a sense, a later confession always may be looked upon as fruit of the first. But this Court never has gone so far as to hold that making a confession under circumstances which preclude its use, perpetually disables the confessor from making a usable one after those conditions have been removed." United States v. Bayer, supra, 331 U.S. at 540, 67 S.Ct. at 1398.

In this case, after Charles Hickey was advised of his constitutional rights by the postal authorities, the character of his earlier confession did not render fatally defective any subsequent statement. Therefore, his rights were not infringed in taking this confession, and such statement was not tainted by the earlier admission given to local police. Consequently, the Court did not err in admitting into evidence this second confession.

The other points raised by the defendant in his motion for new trial were not argued in his brief, and the Court finds them without merit. The defendant's motion for new trial will be denied.