Commonwealth *v.* Moody, Appellant.

Argued January 8, 1968.   Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Gerald I. Roth,* with him *John E. Backenstoe,* for appellant.

*George J. Joseph,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, March 15, 1968:

In October 1965, the appellant, Samuel Moody, was convicted by a jury in Lehigh County of murder in

the first degree and the punishment was fixed at life imprisonment. Following denial of a motion for a new trial, judgment of sentence was imposed as the jury directed. This appeal followed.

The single question raised is whether or not the trial court erred in admitting into evidence a written confession given by Moody to the police.

From the testimony offered by the Commonwealth, the following pertinent facts appear:[1]  At about 6 p.m. on December 31, 1964, Moody killed his wife by firing three bullets from a .38 caliber revolver into her back. At about 6:38 p.m. a city police sergeant, William Glatfeller, received a phone call in his office informing him of the shooting. He proceeded by police car in the direction of the address where the shooting occurred. While en route he received via radio a description of the person suspected of committing the crime. Shortly thereafter he saw Moody, who fitted the description, at a public street intersection. With the assistance of another policeman who arrived on the scene he took Moody into custody. Moody was immediately told that he was "under arrest." He was searched, handcuffed and taken to the police station.

At about 7 p.m., Arthur Allender, a police detective, received a call at home to report to police headquarters immediately. When he arrived, Moody was seated in a "cell corridor" behind a locked door. Admittedly he was not free to leave. Allender escorted Moody into his office and, after asking him his name, address and

---

[1] During the trial, before the confession involved was allowed in evidence, a hearing was held in the absence of the jury on defendant's motion to suppress, in accordance with Pa. R. Crim. P. 323-324. At this hearing police witnesses testified as to the circumstances under which the confession was obtained. This testimony was later repeated before the jury. For the purpose of determining the admissibility of this evidence, we accept the Commonwealth's evidence as true.

employment, inquired "what happened?" Moody un-hesitatingly replied, "I shot my wife." Then Robert E. Sperling, the captain of the city detectives, who also had been summoned from his home, arrived on the scene. After Moody was informed who Sperling was, Sperling asked him what happened. Moody replied, "Mr. Sperling, I'm going to tell you the truth. I shot my wife." Sperling then interrupted Moody and ad-vised him "that anything he said could be used against him; that he need not say anything and he had a right to remain silent." Moody replied, "I want to get it off my chest. I want to tell the truth. I shot my wife."

Shortly thereafter Moody was subjected to ques-tions concerning the details of the crime which, to-gether with his answers, were written down in long-hand and typewritten. The recorded typewritten state-ment was then read to Moody and signed by him. Im-mediately before this particular questioning began, Sperling explained to Moody that he need not make a formal statement, but that if he did so "it would be of his own free will, without any promises, inducements or threats, being fully aware anything he said could be used against him. . . ." It is the admission of this statement in evidence that is assigned as error.

Since the instant trial occurred prior to *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966), the absence of all the procedural safeguards required under that decision in order to secure one's privilege against self-incrimination during police questioning does not in itself constitutionally proscribe evidentiary use of this statement. See *Davis v. North Carolina*, 384 U.S. 737, 86 S. Ct. 1761 (1966); *Johnson v. New Jersey*, 384 U.S. 719, 86 S. Ct. 1772 (1966). However, since the trial was subsequent to *Escobedo v. Illinois*, 378 U.S. 478, 84 S. Ct. 1758 (1964), the statement is not admis-sible in evidence unless the Commonwealth establishes

that all of the procedural safeguards required by that decision before police custodial questioning commences were first employed.

Under *Escobedo*, before custodial interrogation is initiated, warnings must be given to the person questioned that he has a right to remain silent and that if he does speak, anything he says can be used against him, *Commonwealth v. Jefferson*, 423 Pa. 541, 226 A. 2d 765 (1967).[2] Otherwise anything said stemming from such questioning may not be used as evidence.

Since it is conceded that the warnings required by *Escobedo* were not given to Moody before any questioning was initiated and before the first incriminating admissions were made to Officers Allender and Sperling, evidentiary use thereof ordinarily would be constitutionally proscribed.[3] Under *Escobedo*, supra, as explicated by *Miranda*, supra, these warnings must be given before custodial interrogation is initiated. And "custodial interrogation" occurs if a person is questioned after being *"taken into custody* or otherwise deprived of his liberty in any significant way." *Miranda v. Arizona*, 384 U.S. at 444, 86 S. Ct. at 1612 (Emphasis added.) The argument of the Commonwealth that

---

[2] The position of Moody's counsel that under *Escobedo*, the person questioned also must be provided with an attorney during the questioning or at least must be fully advised beforehand of his right to such assistance is incorrect. See *Commonwealth v. Schmidt*, 423 Pa. 432, 224 A. 2d 625 (1966) and *Commonwealth v. Walker*, 428 Pa. 244, 236 A. 2d 765 (1968). Under *Escobedo*, a person is not unconstitutionally deprived of the assistance of counsel during police questioning unless such assistance is requested. Admittedly no request was made in this case.

[3] The admissibility of these particular admissions is not raised in this appeal. Nevertheless, we are persuaded beyond a reasonable doubt and we rule that the evidentiary use thereof was harmless error since evidence thereof was clearly cumulative to the subsequent written confession which we rule was properly admitted in evidence. See infra.

Moody was not "in custody" at the time is untenable. Moody was clearly in custody from the moment he was apprehended and all of the subsequent police questioning constituted "custodial interrogation." See *Henry v. United States,* 361 U.S. 98, 80 S. Ct. 168 (1959).

The central question for decision is whether or not the written statement given by Moody after he received all of the warnings of constitutional rights *Escobedo* requires[4] stemmed from the first illegal questioning and is therefore "the fruit of the poisonous tree," or whether the attending circumstances were such as to remove the taint of the initial illegality. We conclude that the latter is so.

A confession secured after the person involved has been adequately advised of his constitutional rights is not rendered inadmissible *ipso facto* because an earlier confession or inculpatory admission was made in the absence of a warning of these rights, *Evans v. United States,* 375 F. 2d 355 (8th Cir. 1967); *United States v. Hickey,* 247 F. Supp. 621 (E.D. Pa. 1965).[5] While the United States Supreme Court has not considered the exact factual situation this case presents,[6] its decisions concerning the exclusion of valid confessions made following violations by the police of rights guaranteed by the Fourth Amendment are analogous and applicable.

In *Wong Sun v. United States,* 371 U.S. 471, 83 S. Ct. 407 (1963), the scope of taint resulting from vio-

---

[4] Moody did not deny at trial that these warnings were given.

[5] This may not be so if the earlier admissions or confession was the product of coercion. *Payne v. Arkansas,* 356 U.S. 560, 78 S. Ct. 844 (1958); *Commonwealth v. Coyle,* 427 Pa. 72, 76 n.3, 233 A. 2d 542, 544 n.3 (1967).

[6] However, compare *United States v. Bayer,* 331 U.S. 532, 67 S. Ct. 1394 (1947); *Evans v. United States,* 375 F. 2d 355 (8th Cir. 1967); *Cotton v. United States,* 371 F. 2d 385 (9th Cir. 1967); *United States v. Hickey,* 247 F. Supp. 621 (E.D. Pa. 1965).

lations of the Fourth Amendment was considered. The court stated: "We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by the exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " Id. at 487-488, 83 S. Ct. at 417.[7] See also *Commonwealth v. Bishop,* 425 Pa. 175, 228 A. 2d 661, cert. denied, 389 U.S. 875, 88 S. Ct. 168 (1967). Comment Scope of Taint under Exclusionary Rule of the Fifth Amendment Privilege against Self-Incrimination, 114 U. Pa. L. Rev. 570 (1966).

Applying the above standard enunciated in *Wong Sun,* supra, it is clear to us that the written statement now challenged was not the result of the exploitation of any prior illegality, but was the product of Moody's own purge of conscience.

The statement was truly voluntary[8] and spontaneous. As explained by Moody: "I want to get it off my chest." It is also significant to note that at trial Moody testified that when he was apprehended he was on his way to city hall where the police headquarters is located.

Judgment affirmed.

---

[7] In earlier decisions the court seemed to apply other standards. See *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 40 S. Ct. 182 (1920), and *Nardone v. United States,* 308 U.S. 338, 60 S. Ct. 266 (1939).

[8] Even under Moody's own testimony a claim of involuntariness would not be supported.

46

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I agree with the majority that Moody's written confession does not violate *Escobedo*.[1] Unfortunately, its resolution of the scope of taint issue is, in my opinion, unsatisfactory, and on this basis I must dissent.

The burden rests upon the prosecution in situations presenting Fifth Amendment violations to demonstrate that the evidence admitted is not tainted by the prior illegality. Thus, in *Murphy v. Waterfront Commission of New York Harbor*, 378 U.S. 52, 79 n.18, 84 S. Ct. 1594, 1609 n.18 (1964), a case involving the scope of taint where it was alleged that testimony given after a grant of immunity by one jurisdiction had been employed to obtain information used in a prosecution in another jurisdiction, the Supreme Court insisted: "Once a defendant demonstrates that he has testified, under a state grant of immunity, to matters related to the federal prosecution, the federal authorities have the burden of showing that their evidence is not tainted by establishing that they had an independent, legitimate source for the disputed evidence."[2] The Commonwealth here, in my view, had to prove that Moody's written confession was not tainted by his prior, oral statements obtained under circumstances violative of *Escobedo*.

---

[1] My agreement with the majority on the proper application of *Escobedo* to these facts is in no way an abandonment of the position taken in my dissenting opinion in *Commonwealth v. Schmidt*, 423 Pa. 432, 442-45, 224 A. 2d 625, 630-32 (1966). Since Moody's statement was obtained on December 31, 1964 and was thus prior to the September 29, 1965 decision of *Commonwealth v. Negri*, 419 Pa. 117, 213 A. 2d 670 (1965), the *Negri* reading of *Escobedo* would not apply.

[2] The *Escobedo* Court employed language which clearly has Fifth Amendment roots, see 378 U.S. at 488-90, 84 S. Ct. at 1764-65, and we have so interpreted *Escobedo*. *Commonwealth v. Negri*, supra n.5 at 124, 213 A. 2d at 673. I therefore believe that *Murphy* is here applicable.

Given this burden, I believe that a remand to the trial court is necessary to obtain an adequate record for the disposition of Moody's claimed denial of his constitutional rights. The court below, as well as counsel for the Commonwealth and the appellant, did not recognize that the dispositive question was whether Moody's written confession was tainted by his oral statements.[3] The suppression hearing involved only the testimony of the two detectives who procured the statement and this testimony was concerned primarily with the nature of the warnings given Moody. Appellant did not testify at this hearing. The record below is thus defective in two respects: the trial court took no account of the prosecution's burden to prove that the written confession was not tainted[4] and there are no findings whatsoever as to the possible taint.[5] Furthermore, had defense counsel been aware of what this Court considers the dispositive issue, he might well have decided that appellant should testify. Appellant's failure to do so is easily understandable in light of the fact that defense counsel believed that the warnings given were insufficient to sustain even the written con-

[3] During the trial, the court below specifically ruled that at the time detectives Allender and Sperling obtained Moody's first oral statements the point of custodial interrogation had not been reached. The majority, as do I, believe that this ruling was erroneous. However, having so ruled, it was unnecessary for the trial court to reach the scope of taint issue as is evidenced by the trial court opinion: "The defendant's statement was properly admitted into evidence. When the interrogation took place the police officers were not required to advise him of his right to counsel and of his right to remain silent."

[4] If the trial court had been aware of the Commonwealth's burden, it is possible that the testimony of the two detectives would have received a different evaluation.

[5] The trial court, as noted in footnote 3 of this opinion, was concerned with only two issues: was Moody's statement voluntary and were the required *Escobedo* warnings given.

fession and that this could be demonstrated by testimony of the detectives alone.

Furthermore, although in view of my belief that a remand should be ordered it is not necessary to express my view on the resolution of the scope of taint problem, since the majority has chosen to resolve this issue on this record, I must note that I have considerable doubt as to the correctness of its resolution. As the majority correctly indicates, its primary authority, *Wong Sun*, is a decision concerned with a Fourth Amendment violation. However, I believe that *Murphy*, supra, indicates that the Supreme Court believes that different considerations govern in Fifth Amendment scope of taint situations than those that obtain in Fourth Amendment cases;[6] and this difference, produced by a difference in the nature of Fifth and Fourth Amendment protections, is favorable to the accused.[7]

---

[6] We, too, have indicated that in many situations one rule obtains in Fourth Amendment cases while another obtains in Fifth Amendment problems although on first blush the issue presented would seem to be identical in either case. See *Commonwealth v. Padgett*, 428 Pa. 229, 232, 237 A. 2d 209, 210-11 (1968). In fact, the very Comment the majority cites, concludes (114 U. Pa. L. Rev. at 577) : "The Supreme Court's articulation of an unqualified 'independent source' test in Murphy would seem to be an implicit rejection of its two most recent tests [*Wong Sun* and *Nardone*] and a reaffirmation of the original Silverthorne test. This conforms to the analysis that views the fifth amendment exclusionary rule as stricter than the exclusionary rule which sprang from the fourth amendment. Because it is more strict, the fifth amendment exclusionary rule is likely to have a more inhibiting effect upon law enforcement than the Mapp decision had. This, however, would seem a necessary result in light of the different purposes served by the exclusion of evidence under the fourth and fifth amendments." See also, George, A New Look At Confessions: Escobedo-The Second Round 117-19 (1967).

[7] In *United States v. Bayer*, 331 U.S. 532, 541, 67 S. Ct. 1394, 1398 (1947), a situation in which a coerced confession was followed by an allegedly untainted confession, the Supreme Court commented that *Silverthorne* and *Nardone*, two Fourth Amend-

This observation is confirmed by *Wong Sun* itself. The Court there said (371 U.S. at 486, 83 S. Ct. at 416-17): "The Government argues that Toy's statements to the officers in his bedroom, although closely consequent upon the invasion which we hold unlawful, were nevertheless admissible because they resulted from 'an intervening independent act of free will.' This contention, however, takes insufficient account of the circumstances. Six or seven officers had broken down the door and followed on Toy's heels into the bedroom where his wife and child were sleeping. He had been almost immediately handcuffed and arrested. Under such circumstances it is unreasonable to infer that Toy's response was sufficiently an act of free will to purge the primary taint of the unlawful invasion."

The majority here offers a similar justification for the lack of taint, i.e., Moody's statement was "truly voluntary and spontaneous." Yet the circumstances do not differ sufficiently from *Wong Sun* to convince me that Moody's statement was purged of taint. Moody had been arrested and handcuffed; he was seated in a "cell corridor" behind a locked door when detective Allender arrived. In custody, faced with two police officers and having twice admitted that he shot his wife, "it is unreasonable to infer that . . . [Moody's] response [to questions propounded after the *Escobedo* warnings were given], was sufficiently an act of free will to purge the primary taint of the unlawful . . . [prior questioning]."

What seems probative to me is the fact that no time elapsed between Moody's oral statements made under circumstances violative of *Escobedo* and the reduction of his confession to writing other than that time nec-

---

ment cases, "did not deal with confessions but with evidence of a quite different category and do not control this question."

essary to give the warnings and record the third statement. Mr. Justice JACKSON, writing for the Supreme Court in *United States v. Bayer,* 331 U.S. 532, 540, 67 S. Ct. 1394, 1398 (1947), aptly centers upon the position of the accused in such circumstances: "[A]fter an accused has once let the cat out of the bag by confessing, no matter what the inducement, he is never thereafter free of the psychological and practical disadvantages of having confessed. He can never get the cat back in the bag. The secret is out for good. In such a sense, a later confession always may be looked upon as fruit of the first."

However, the Court in *Bayer* believed that a six month span between Bayer's first invalid confession and his second valid confession was sufficient to purge the taint. *Westover v. United States,* 384 U.S. 436, 86 S. Ct. 1602 (1966), a companion case to *Miranda,* compels a conclusion that the crucial factor is not whether the prosecution has exploited information gained by a prior illegality (as the majority believes) but whether, where one confession follows another, the second confession is sufficiently removed in time, place and atmosphere that the court can be assured that the second confession was not a product of the same illegality that produced the first. Westover had been questioned by state authorities for 14 hours without having been given any warnings; he was then given to the FBI at which time he was given the requisite warnings. Holding that the statement procured by the FBI was inadmissible, the Court stated (*Miranda v. Arizona,* 384 U.S. 436, 496, 86 S. Ct. 1602, 1639 (1966)): "A different case would be presented if an accused were taken into custody by the second authority, removed both in time and place from his original surroundings, and then adequately advised of his rights and given an opportunity to exercise them. But here the FBI in-

terrogation was conducted immediately following the state interrogation in the same police station—in the same compelling surroundings." Certainly, there can be no contention here that Moody's written statement was obtained after he had been removed from "the same compelling surroundings" that produced his oral statements.

The Supreme Court has obviously made a distinction between the scope of taint in those cases where a valid confession follows an invalid one and the scope of taint in those where an illegal search or arrest has produced information damaging to the accused. In the confession cases, as demonstrated by *Bayer*, the focus must be upon the psychological pressures facing an accused and the remedy is to insure that the accused has been effectively removed from those pressures before a second statement is obtained. Where an illegal search leads to additional information the focus shifts to the conduct of the police and their exploitation of a prior illegality; except perhaps where the illegal search or arrest produces a confession, the accused's state of mind is not relevant.

Finally, I note that the evidentiary use of Moody's two oral and one written confession cannot be deemed harmless error. See *Commonwealth v. Padgett*, 428 Pa. 229, 237 A. 2d 209 (1968). Although there were three eyewitnesses to the homicide, Moody at trial insisted that he could not remember any of the details of the shooting. This testimony was obviously designed to impress upon the jury that Moody lacked the specific intent to kill which is a requisite for a first degree murder conviction. However, in Moody's statement he was able to recall the details of the shooting, a fact which the jury may well have believed cast considerable doubt on appellant's memory lapse. Under these circumstances, I do not believe that the admission of

Moody's confession was "harmless beyond a reasonable doubt."

Since I am convinced that at a minimum this record must be remanded, I dissent.

