## Commonwealth, Appellant, *v.* Baker.

Argued March 10, 1969. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Nevin J. Trout,* Assistant District Attorney, with him *John F. Rauhauser, Jr.,* District Attorney, for Commonwealth, appellant.

*J. Patrick Clark,* Assistant Public Defender, for appellee.

OPINION BY WRIGHT, P. J., March 20, 1969:

Harper Baker was indicted by the Grand Jury of York County on Bill No. 290 January Sessions 1968, charging larceny of a Chevrolet automobile. A plea of not guilty was entered, and the case was called for trial before Honorable JAMES E. BUCKINGHAM and a jury. At the conclusion of the Commonwealth's testimony, the trial judge sustained a demurrer to the evidence. The Commonwealth has appealed. The testi-

mony adduced at the trial is summarized in the opinion below as follows:

"The Defendant was charged with larceny of a 1954 light green 4-door Chevrolet sedan automobile. At the trial the owner of the car, Glenn Brown, testified that he had gone to work at his place of employment in the Borough of Hanover at 6:00 o'clock in the evening on March 28, 1968, and had parked his car in his company's parking lot. When he finished work at midnight he returned to the lot, found his car missing and reported it to the Hanover Borough Police. He had left the keys in the car and the car was unlocked. He had given no one permission to take the car. He next saw it later that night at a garage where he was told to go by the Penn Township Police. The car had been apparently damaged from rolling over.

"Commonwealth's next witness was James T. Cook, an officer of the Penn Township Police Department who testified that at about 10 minutes after midnight on March 29, 1968, he came upon a 1954 green 4-door Chevrolet sedan automobile about 2½ miles from Hanover which was resting on its roof just off the road in a field. The accident had apparently happened just before Officer Cook arrived because he saw a large cloud of dust on the road. No one was in the car but he apprehended a man by the name of Robert Krichten who was walking away from the car. The officer talked to Krichten for a few minutes during which time he received a radio call from the Hanover Police Department informing him of the stolen car. The registration number of the wrecked car matched that of the stolen car. As a result of this radio call and his conversation with Krichten, Officer Cook took Krichten to Police Headquarters.

"The Commonwealth's next witness was Sgt. Donald C. Sponseller of the Hanover Borough Police who

testified that at approximately 6 :00 A.M. on March 29, 1968, he went to the Defendant's apartment in Hanover and requested him to come to Police Headquarters. The sergeant did this because he suspected the Defendant of being involved in the theft of Mr. Brown's car, having obtained this information 'from other sources'. The sergeant then testified, out of the hearing of the jury, that at Police Headquarters he secured an oral statement from the Defendant in which the Defendant asked the sergeant if he 'could do something for him as far as making it easy on a sentence that he might get through this'. After giving the statement, Defendant was promptly taken to a Justice of the Peace and charged with the larceny of the Brown car.

"Before the Defendant made the statement, Sgt. Sponseller read to him from a card prepared and distributed by the District Attorney's Office of York County which contained the following warnings : 'The law requires that you be advised that you have the right to remain silent, that anything you say *can* be used against you in a Court of Law, that you have the right to the presence of an attorney and if you cannot afford an attorney one will be appointed for you prior to any questioning if you so desire'. (Emphasis added).

"The Commonwealth's last witness was Richard A. Hoffman of the Hanover Borough Police who corroborated Sgt. Sponseller's testimony that the only warnings given to Defendant was as above set forth on the card and he further testified that Defendant was implicated in the theft by the statement previously obtained by the police from Krichten and that it was for this reason that Defendant was brought in for questioning".

The narrow issue presented by the instant appeal is whether an incriminatory statement made by one in

custody is rendered inadmissible where, in warning of the right to remain silent, the questioner states that anything said "can" be used adversely without adding the words "and will" be so used. The court below, relying on certain language in *Commonwealth v. Medina*, 424 Pa. 632, 227 A. 2d 842, ruled it mandatory that the suspect be advised that anything he said "could and would" be used against him in court, and that failure to use the words "and will" or the words "and would" was fatal. We hold to the contrary, and therefore reverse.

In the *Medina* case, Mr. Justice EAGEN discussed the decisions of the United States Supreme Court in *Escobedo v. Illinois*, 378 U.S. 478, 84 S. Ct. 1758, and *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602. He quoted from the *Miranda* opinion as follows (all italics hereafter supplied) : "The warning of the right to remain silent must be accompanied by the explanation that anything said *can and will* be used against the individual in court". Our examination of the *Miranda* opinion reveals that this conjunctive was used only once. At other times Chief Justice WARREN used language equivalent to that contained on the card in the case at bar. Thus he said: "Prior to any questioning the person must be warned that he has a right to remain silent, that any statement he does make *may* be used in evidence against him, and that he has a right to the presence of an attorney, either appointed or retained". Again, in discussing the right to be informed of the privilege of consultation with counsel: "As with the warnings of the right to remain silent and that anything stated *can* be used in evidence against him, this warning is an absolute prerequisite to interrogation". And finally: "To summarize, we hold that . . . the following measures are required. He must be warned prior to any questioning that he has the right

to remain silent, that anything he says *can* be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires".

That our Supreme Court has not adopted the rule promulgated by the court below is evident from other decisions, all following *Medina* in point of time. In *Commonwealth v. Moody*, 429 Pa. 39, 239 A. 2d 409, Mr. Justice EAGEN himself said: "Under Escobedo, before custodial interrogation is initiated, warnings must be given to the person questioned that he has a right to remain silent and that if he does speak, anything he says *can* be used against him . . . Under Escobedo, supra, as explicated by Miranda, supra, these warnings must be given before custodial interrogation is initiated".

In *Commonwealth v. Feldman*, 432 Pa. 428, 248 A. 2d 1, the appellant argued that warnings given her prior to questioning were inadequate. According to the record, as reported in the opinion, the district attorney used, inter alia, the following warning: "Now you realize, do you not, that you have the right to remain silent, if you should talk, anything you say *can* be used against you at a future court proceeding, . . .'" Commenting on this warning, Mr. Justice ROBERTS said: "The quoted language virtually parallels the warnings required by Miranda, supra, 384 U.S. at 444, 86 S. Ct. at 1612. Therefore, we can see no reason for holding that this language was not entirely adequate".

Similarly, in *Commonwealth v. Leaming*, 432 Pa. 326, 247 A. 2d 590, Mr. Justice JONES delineated the requirement of *Miranda* in the following language: "Miranda requires that a person undergoing custodial interrogation must be warned that he has the right to

remain silent, that anything he says *can* be used against him in court, that he has the right to consult with an attorney of his own choice and to have that attorney present while he answers any questions and that, if he is unable to afford an attorney, one will be provided for him before he is asked any question".

In brief, the entire purpose of the warning of a suspect as to the right to remain silent is to make sure that the person about to be. questioned understands the consequences which "may" result if he chooses to speak. We are all of the opinion that the *Medina* decision is not to be construed as mandating a warning that the suspect's statement not only "may" but also "will" be used against him.

The order sustaining the demurrer is reversed with a procedendo.