555 A.2d 1254

COMMONWEALTH of Pennsylvania, Appellee,

v.

John MELILLI, Appellant.

COMMONWEALTH of Pennsylvania, Appellee,

v.

Nicholas DeSTEFANO, Appellant.

COMMONWEALTH of Pennsylvania, Appellee,

v.

Shirley DORANZO, Appellant.

COMMONWEALTH of Pennsylvania, Appellee,

v.

John T. DEVLIN, Appellant.

COMMONWEALTH of Pennsylvania, Appellee,

v.

Richard D. MASTRO, Appellant.

COMMONWEALTH of Pennsylvania, Appellee,

v.

Samuel M. DORAZIO, a/k/a Samuel Doranzo, Appellant.

COMMONWEALTH of Pennsylvania, Appellee,

v.

Frank R. PERRI, Appellant.

COMMONWEALTH of Pennsylvania, Appellee,

v.

Louis T. PISELLI, Jr., Appellant.

Supreme Court of Pennsylvania.

Argued Oct. 24, 1988.

Decided March 13, 1989.*

* This decision was considered and rendered prior to March 7, 1989.

406

F. Emmett Fitzpatrick, Edward Rudley, Philadelphia, Robert Gabriel, Nigel Bowman, Robert Simone, William Bowe, Richard Conn., Philadelphia, for appellant.

David M. McGlaughlin, for amicus—Committee of the Pa. Assoc. of Criminal Defense Lawyers.

Gaele McLaughlin Barthold, Deputy Dist. Atty., Ronald Eisenberg, Chief, Appeals Div., Philadelphia, Catherine Marshall, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and STOUT, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

Presented for consideration as the main issue in this appeal is whether our jurisprudence encompasses a good faith exception to the requirement of probable cause to support an application for the installation of pen registers. Because we hold that no such exception exists as yet in this Commonwealth, as based on these facts, we reverse the Superior Court and reinstate the decision of the suppression court disallowing all of the telephone evidence. We also determine as part of this analysis that the installation of pen registers must be supported by probable cause.

The criminal charges against the Appellants grew out of an investigation by the District Attorney of Philadelphia into organized illegal gambling operations. Based on confidential information, the authorities determined that the home of Appellant, Richard Mastro, was being used to conduct these operations over his phone. A court order issued at the request of the police authorized the Bell Telephone Company to install a pen register device on Mastro's line.[1] A separate confidential tip led to a second

1. Under the Wiretapping and Electronic Surveillance Control Act, October 4, 1978, P.L. 831, No. 164, 18 Pa.C.S. § 5701–5726, a pen register was defined as: "A mechanical or electronic device which attaches to a particular telephone line, and which records outgoing numbers dialed by a particular telephone, but does not: (1) monitor the contents of any communication; or (2) record the origin of any incoming communications.

As amended by Act 115, signed into law on October 21, 1988, § 5702, the new definition reads as follows:

"A device which records or decodes electronic or other impulses which identify the numbers dialed or otherwise transmitted, with

order to place a pen register on the telephone line of Appellant, Nicholas DeStefano. Information obtained through the Mastro pen register led police to suspect Jerry DiJoseph, and his line also was subjected to a pen register based on probable cause.[2]  Subsequently, court-authorized wiretaps then were installed on all three lines in order to record criminal conversations. Each wiretap application was supported by a separate affidavit stating probable cause. These investigations culminated in the issuance of search and seizure warrants for twenty-three locations, including each Appellant's residence. Police seized physical evidence of corrupt organizations and illegal gambling. In December, 1983, Appellants were charged with gambling offenses (lotteries, gambling, pool selling and bookmaking), conspiracy, and violations of the Corrupt Organization Act. Pursuant to pre-trial motions, the suppression court ruled that the Commonwealth lacked probable cause for the installation of the pen registers and, therefore, all evidence produced thereby, including wiretapped material seized by the police, was suppressed.

In a split decision, however, the Superior Court reversed on several grounds. First, it concluded that our law required probable cause for the installation of pen registers. Second, in spite of that requirement, the Commonwealth still was entitled to a good faith exception to the exclusionary rule, thereby allowing the evidence gained from the use of the pen registers under the facts of this case. Third, even without a good faith exception to the use of the pen registers, the separate wiretaps installed on the telephones of Mastro and DeStefano were independently reliable so as to confirm the existence of probable cause as to the evidence gained from those defendants.

respect to wire communications, on the telephone line to which the device is attached. The term does not include a device used by a provider or customer of a wire or electronic communication service for billing, or recording as an incident to billing, for communication service provided by the provider, or any device used by a provider, or customer of a wire communication service for cost accounting or other like purposes in the ordinary course of business."

**2.**  Jerry DiJoseph is not a party to this appeal.

Adoption of the good faith exception rule by the Superior Court stemmed from a time-lag conflict over governing case law. At the time when all the pen registers were placed in 1983, the view regarding the need for a prior finding of probable cause to use pen registers was embodied in *Smith v. Maryland*, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979), which held that under federal law the use of a pen register was not a search under the Fourth and Fourteenth Amendments and that probable cause was not required.[3] Four years later, however, our Superior Court decided *Commonwealth v. Beauford*, 327 Pa.Superior Ct. 253, 475 A.2d 783 (1984), allocatur denied, 508 Pa. 319, 496 A.2d 1143 (1985), which held that Article 1, section 8 of the Pennsylvania Constitution was offended by the installation of a pen register device without probable cause to support the application—a rejection of the federal standard. The Superior Court also held that *Beauford* applies retroactively, thereby controlling the instant case.

Drawing upon the suppression record, the Superior Court concluded further that "the orders authorizing installation and use of pen registers were not based upon findings of probable cause." The suppression judge "made no findings before issuing orders authorizing installation of the pen registers in question. The orders do not suggest that Judge Conroy ever considered whether probable cause existed." *Commonwealth v. Melilli, et al*, 361 Pa.Superior Ct. 429, 438–439, 522 A.2d 1107, 1111 (1987).

At the urging of the Commonwealth, nevertheless, the Superior Court approved the convictions by reading into our law the good faith exception doctrine of federal law announced in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), and *Massachusetts v. Sheppard*, 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984). The Superior Court's application of that doctrine to the case under review here is based on the following rationale:

**3.** It should be noted that orders for the pen registers were obtained because Bell Telephone Company refused installation without prior court authorization.

Suppression of the evidence obtained by the installation of the pen registers in the instant case cannot further the purposes of the exclusionary rule. At the time when the pen registers were installed, existing law explicitly told law enforcement officials that the use of pen registers did not constitute a search. Pursuant to the Constitution of the United States, according to Supreme Court interpretation, the use of pen registers did not require a prior showing of probable cause. See: *Smith v. Maryland, supra.* According to the law then in effect, therefore, law enforcement agencies were not required to obtain a court order or warrant in order to install and make use of a pen register. Nevertheless, in order to comply with telephone company requirements, police in the instant case went further than the law required and requested from a neutral magistrate an order authorizing installation of pen registers. The magistrate, who also acted pursuant to existing law, issued an order authorizing the use of pen registers without a showing of probable cause. It was not until later that the Superior Court, applying principles of state constitutional law, outlawed the use of pen registers without a prior showing of probable cause. It seems clear, therefore, that the use of pen registers by law enforcement authorities was accomplished in good faith, in accordance with statutory authority in the Commonwealth of Pennsylvania, and consistently with procedure explicitly approved by the Supreme Court of the United States. To suppress evidence obtained under these circumstances would not further any of the purposes intended to be served by the exclusionary rule. Indeed, to deprive the Commonwealth of the use of evidence obtained in good faith and in accordance with then existing law as determined by the highest court in the land, would not only fail to serve the purposes of the exclusionary rule but would tend to defeat a substantial public interest in law enforcement. Therefore, we agree with the Commonwealth that an exception to the exclusionary rule must be created which has application narrowly to situations in which law enforcement officials

have acted (1) in good faith; (2) in reasonable reliance upon a procedure expressly sanctioned by existing judicial decisions; (3) pursuant to authorization obtained from a neutral magistrate. Because those prerequisites have been met in the instant case, we reverse the orders suppressing the evidence obtained by the use of the pen registers.

We also reverse the order suppressing the evidence obtained through the telephone intercepts and the physical evidence seized pursuant to the search warrants. The suppression court's order was based upon its conclusion that absent the pen register evidence, the affidavits in support of the wiretap applications and search warrants were insufficient to establish probable cause. However, in light of our holding that the pen register evidence should not have been suppressed, it was unnecessary to discount that evidence when determining the existence of probable cause.

■ We first address the issue of whether *Beauford* was properly decided by the Superior Court. The *Beauford* court held that a pen register cannot be utilized by law enforcement authorities without an order based on probable cause, and we agree fully with that conclusion. The decision constituted an express rejection of federal law which, as already noted above in reference to *Smith v. Maryland,* held that the use of a pen register was not a search under the Fourth and Fourteenth Amendments. *Beauford* instead rested on state constitutional grounds, Article 1, § 8 of the Pennsylvania Constitution, which may be employed to guard individual privacy rights against unreasonable searches and seizures more zealously than the federal government does under the Constitution of the United States by serving as an independent source of supplemental rights. *Beauford,* 327 Pa.Superior Ct. at 262, 475 A.2d at 788.

Precedent for this analysis in *Beauford* was supplied by our earlier case of *Commonwealth v. DeJohn,* 486 Pa. 32, 403 A.2d 1283 (1979), in which we rejected federal law by

deciding that under our own Constitution police can gain access to banking records "only through a warrant based on probable cause." *Beauford* extended "the *DeJohn* holding to information obtainable through the use of a pen register." *Beauford*, 327 Pa.Superior Ct. at 264, 475 A.2d at 789. "Moreover," the Court argued, "our constitutional interpretation derives independent support from Pennsylvania's long history of affording special protection to the privacy interest inherent in a telephone call," citing *Commonwealth v. Papszycki*, 442 Pa. 234, 275 A.2d 28 (1971), which construed legislative intent as requiring strict observance of privacy rights as to such intrusions into telephone conversations.[4] Also see, *Commonwealth v. Platou*, 455 Pa. 258, 312 A.2d 29 (1973), *cert. den.*, 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974). Cf. *Commonwealth v. Stehley*, 235 Pa.Superior Ct. 150, 338 A.2d 686 (1975) (expectation of privacy in regard to a pen register can be adequately protected by the Fourth Amendment and "we find no significant expectation of privacy to exist with respect to the destination of one's phone calls").

While we remain cognizant of the appearance that federal standards allow greater latitude in law enforcement, it is clear to us that *Beauford* represents the marked trend of our state law to bring intrusions into telephone communications within the confines of an expectation of privacy under the State Constitution and thereby be subject to the requirements demonstrating probable cause.[5] In this analysis, of

4. *Beauford*, 327 Pa.Superior Ct. at 266, 475 A.2d at 790, contains a thorough examination of the legislative history of the Act, indicating an intent on the part of the House Judiciary Committee to protect individual rights as much as possible.

5. For purposes of clarity, we note that the recent changes in the Wiretapping and Electronic Surveillance Act wrought by Act 115 address this problem by the universal insertion of the word "electronic" in the language of the statute. As demonstrated in footnote 1 above, "electronic" is part of the new definition of a pen register. Prior to the addition of the word "electronic," probable cause arguably was not required under the statute, although it was mandated by the Pennsylvania Constitution. By inserting "electronic" throughout the statute, including especially the application for a

course, we recognize that a judicial order authorizing the installation of pen registers is the equivalent of a search warrant in its operative effect where the intrusion involves a violation of a privacy interest protected under Article 1, § 8 of the Pennsylvania Constitution. As such, the affidavit and order must comply with the requirements of probable cause required under Pa.R.Crim.P. Chapter 2000, Search Warrants. On this point, see *Beauford*, 475 A.2d at 791, n. 7.

In *Beauford*, the Superior Court intended to equate telephone numbers with other forms of telephone communication which are regarded as private. Telephone activities are largely of one piece, and efforts to create distinctions between numbers and conversational content are constitutionally untenable in our view.

■ That *Beauford* was applied retroactively is equally correct. The Superior Court majority analyzed the issue solely on the basis of *Commonwealth v. Cabeza*, 503 Pa. 228, 469 A.2d 146 (1983), which requires that criminal cases be given retroactive applicability where the opinion does not render it prospective only and where the defendant has preserved the issue through every level of his proceedings. We pause momentarily to point out that *Commonwealth v. Gillespie*, 512 Pa. 349, 516 A.2d 1180 (1986), restricts retroactivity to cases on direct review where the issue was properly preserved, while there is language in *Commonwealth v. Harper*, 512 Pa. 155, 516 A.2d 319 (1986) (Mr. Justice Papadakos concurrence), which takes the analysis back to the familiar tripartite standard of *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). We need not go any further at this point than to indicate that under either standard, retroactive application comports with our law on the facts of this case.

■ Our next issue for review is the good faith exception doctrine which the Superior Court read in this case. That decision represents the only instance in our state jurispru-

warrant, we conclude that the amended Act intends to provide for the constitutional mandate in order to install pen registers.

dence so far to have attempted to read our State Constitution according to the *Leon* or *Sheppard* rationale. In *Commonwealth v. Mason*, 507 Pa. 396, 405, n. 2, 490 A.2d 421, 425, n. 2 (1985), Mr. Justice Larsen expressed no "opinion at this time" as to whether *Leon* could be applied to the state exclusionary rule. Unfortunately, the present Superior Court simply misreads Justice Byron White's language in those cases, and the doctrine as applied here must be rejected on review.

In *Leon*, the court concluded in relevant part (468 U.S. at 923, 104 S.Ct. at 3421):

> The exception we recognize today will also not apply in cases where the issuing magistrate wholly abandoned his judicial role in a manner condemned in *Lo–Ji Sales, Inc. v. New York*, 442 U.S. 319, [99 S.Ct. 2319, 60 L.Ed.2d 920] (1979); in such circumstances, no reasonably well-trained officer should rely on the warrant. Nor would an officer manifest objective good faith in relying on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. *Brown v. Illinois*, 422 U.S. [590] at 610–611 [95 S.Ct. 2254 at 2265–2266, 45 L.Ed.2d 416 (1975)].

This conclusion followed from Justice White's insistence that "it is clear that in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly based." *Id.*, 468 U.S. at 922–923, 104 S.Ct. at 3420–3421, footnote omitted.

We do not brush aside lightly the concerns of law enforcement officers in pursuing criminal activity when we reject the application of the good faith exception doctrine to this case. It is patently obvious to us, however, that the "reasonable" standard of *Leon* was violated and that the evidence cannot stand. As the Superior Court's own opinion makes clear:

> As with all searches not falling within one of the recognized exceptions to the warrant requirement, a finding that probable cause exists must be made by a neutral judicial authority before a pen register can be installed.

The magistrate must make a judicial determination, albeit a nontechnical, common sense judgment ... as to whether probable cause exists. It is not enough for a policeman to present an affidavit to the magistrate prior to the search which affidavit the judiciary may consider on the issue of probable cause with complete hindsight after the police have completed their search. The magistrate must *actually make* a finding of probable cause to validate the warrant before he issues it. Moreover, he must do it by written order.

*Commonwealth v. Chandler*, 505 Pa. 113, 123–124, 477 A.2d 851, 856 (1984) (emphasis added).

In the instant case, the orders authorizing installation and use of pen registers were not based upon findings of probable cause. At the time when the applications for the use of pen registers were made, both the affiants and Judge Conroy were operating under the belief that a warrant based upon probable cause was not a necessary condition for the use of a pen register. It was for this reason that Judge Conroy made no findings before issuing orders authorizing installation of the pen registers in question. The orders do not suggest that Judge Conroy ever considered whether probable cause existed.

Moreover and in any event, the affidavits accompanying the pen register applications were insufficient to show the existence of probable cause. The affidavits in support of the Mastro and DeStefano pen registers contained vague and conclusory averments in support of the reliability of the tips received from the confidential informants; and police attempts to corroborate the information had been inconclusive. The affidavit in support of the installation of the DiJoseph pen register was based entirely upon information obtained through the Mastro pen register. Absent this information, the affidavit was void of facts showing probable cause.

*Melilli*, 522 A.2d at 1110–1111.

These conclusions by the Superior Court regarding the reliability of the informants were based on the decisions of Suppression Court Judge Samuel Lehrer:

THE COURT: All right. Well, I have pretty much made up my mind on the sufficiency or lack thereof on this affidavit.

     \*     \*     \*     \*     \*     \*

THE COURT: Well, I believe that the application, I believe that C–1 taken in its entirety, but was particularly with reference to the 4 corners of the affidavit of C–1, that the probable cause is lacking, and that Judge Conroy in signing this order lacked authority to do so.

     \*     \*     \*     \*     \*     \*

Also, generally, just briefly speaking, I believe that in addition to that fact the issuing authority here, the Municipal Court Judge Perforce had to consider the application as part of the affidavit, and that I can't find that he acted in a neutral capacity which is required of an issuing authority, since it is obvious that he was also influenced by the application and its misrepresentations as to the state of the law or his own duty under the circumstances.

There are other reasons, but I see no reason to elaborate on them at this time. Now, with reference then to—therefore, the evidence obtained under this order will not be admissible against the Defendant Mastro and all those other persons who have been identified as a result of an application of the devices installed.

(Record, pp. 401a–403a; all of the applications and affidavits pertaining to this case appear herein at 468a–797a.) The DeStefano and DiJoseph pen register warrants (C–6 and C–11 respectively) were also voided:

THE COURT: There are outstanding motions to suppress two Pen Registers and three wiretaps. I believe that the two Pen Registers still outstanding are C–6 and C–11.

All right. The Court finds that these two Pen Registers lack probable cause. The motion to suppress those is granted. (Record, 455(a)–456(a).

Judge Lehrer's exhaustive opinion (Supplemental Record, pp. 823a–896a) included Findings of Fact which, in brief, are relevant to our analysis. As to C–1, the "affiant's informa-

tion is in the nature of double hearsay;" the Trooper-affiant was not a party to any alleged conversation between the informant and the dialer; no information in the affidavit explains "the significance of these addresses or their relationship to each other;" evidence of prior arrests fail to "establish timeliness, freshness, or other relevancy;" the affiant "does not state how the surveillance was conducted, which days, over what span of time;" the affiant failed to "state any specific manner personally known to him of events or conduct supporting Richard Mastro's alleged reputation as a Major Gambling figure." (*Id.*, infra, pp. 840a–842a). As to C–6, "the confidential informant passed his information on to a person who was not the affiant;" no "suspicious activity was observed;" there "is nothing in the affidavit" to show that "NICK" was Nicholas DeStefano; the affidavit is ambiguous as to which information led to arrests, nor are there facts stated to test the "freshness" of the information; there "is no reasonable basis (other than conjecture) in the affidavit for evaluating the confidential informant's reliability." (*Id.*, infra, 854a–856a.) As to C–11, Judge Lehrer concluded curtly that "the information in the affidavit is derived from data obtained from pen register and DNR device installed" on Mastro's line. (*Id.*, p. 861a).

We see no reason to quarrel with Judge Lehrer's opinion. It is sufficient to note that the orders for the pen registers failed the "totality of circumstances" test required by *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), which we adopted as the state test in *Commonwealth v. Gray*, 509 Pa. 476, 503 A.2d 921 (1985):

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial

basis for ... conclud[ing] that probable cause existed."
*Jones v. United States*, [362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)].

*Gates*, 462 U.S. at 238–239, 103 S.Ct. at 2332.

In *Commonwealth v. Chandler*, we addressed this matter further (505 Pa. at 121–123, 477 A.2d 851):

It is not enough, absent exigent circumstances, that a policeman believe the facts he has are a probable cause for a search warrant. The people of this state and nation are constitutionally entitled to an independent judicial determination of probable cause before they must open to the policeman's knock at the door in the night. *See Johnson v. United States*, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948). Moreover, that determination must be made before and not after the search. The written affidavit of probable cause simply insures an accurate record of the verified (sworn) facts the issuing authority had when he made his determination before the event. *See* Pa.R.Crim.P. 2003(a), quoted *post* [505 Pa.] at p. 123, n. 4 [477 A.2d at p. 856, n. 4]. Such a prior reduction to a written affidavit is of course particularly useful since stenographic records are not made in such matters before the District Justice. The written affidavit also eliminates the unseemly necessity of calling the judicial officer himself to the stand in a swearing contest with the policeman to determine what each knew when. The facts in the affidavit, however, are not the District Justice's judgment. Indeed, they are only testimonial evidence of the facts themselves.

Reasonable judges and legal scholars may well differ over the technicalities of how best to memorialize the facts the issuer of the warrant had when he issued it and how technical courts should be in reviewing his decision to issue. We believe, however, none ever doubted the necessity of the exercise of judicial discretion.

\* \* \* \* \* \*

The issuing judicial authority, in this case a District Justice, has the authority and obligation to draw such

reasonable inferences as he will from the material supplied to him by police applying for a warrant and to make a finding on the issue of probable cause. Moreover, the magistrate is free to exact such assurances as he deems necessary to insure that the information on which probable cause is based has been obtained in a reliable way from a credible person. *Illinois v. Gates,* 462 U.S. 213 at 240, 103 S.Ct. 2317 at 2333, 76 L.Ed.2d 527 at 549 (1983).

The magistrate's function is more than the ministerial one of administering an oath to an officer who has set forth facts the officer believes constitute probable cause. The magistrate must make a judicial determination, albeit a non-technical, common sense judgment, *see Gates,* as to whether probable cause exists.

Such judicial behavior surely was envisioned by *Leon's* strictures as noted above, for here, the issuing authority "wholly abandoned his judicial role." We leave for another day and another differing set of facts to determine whether a good faith exception will be read into the law of this jurisdiction.

■ Our final issue for review is the Superior Court's holding that even in the absence of the good faith exception doctrine, the warrants for the subsequent wiretaps of Mastro and DeStefano were valid because of the reliability of the informants. The correct inquiry must go much further in determining whether the wiretaps were the poisoned fruit of the tainted pen registers or whether there was an independent basis for the wiretaps as claimed by the Commonwealth. Our acceptance of the exclusionary rule in *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), is aimed at depriving the police of the benefits derived from using information which was obtained unlawfully. See, *Commonwealth v. Brown,* 470 Pa. 274, 368 A.2d 626 (1976).

The classic analysis depends on whether the evidence was the product of the initial illegality or was secured by means sufficiently different to remove the primary taint. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d

441 (1963), as cited early in our cases of *Commonwealth v. Holton*, 432 Pa. 11, 247 A.2d 228 (1968); *Commonwealth v. Moody*, 429 Pa. 39, 239 A.2d 409 (1968); and *Commonwealth v. Bishop*, 425 Pa. 175, 228 A.2d 661, *cert. den.*, 389 U.S. 875, 88 S.Ct. 168, 19 L.Ed.2d 159 (1967). If the prosecution can demonstrate that the allegedly tainted evidence was procured from an independent origin—a means other than the tainted sources—the evidence will be admissible. *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920), and *Segura v. United States*, 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984); for Pennsylvania cases construing *Silverthorne*, see, for example, *Commonwealth v. Brown, supra; Commonwealth v. Garvin*, 448 Pa. 258, 293 A.2d 33 (1972); *Commonwealth v. Cephas*, 447 Pa. 500, 291 A.2d 106 (1972); and *Commonwealth v. Bishop*, 425 Pa. 175, 228 A.2d 661 (1967). In sum, admissibility will not lie where the road between the original tainted evidence and the poisoned fruit is direct and uninterrupted.

■ Based on the facts of this case, it is obvious that the wiretap warrants grew out of the information gained by virtue of the use of the pen registers. The police, in effect, would not have been led to the act of wiretapping those specific phones had they not had data from the pen registers in the first place. The wiretaps were linked directly to the pen registers and must be excluded also as fruit of the poisonous tree.[6]

Ever mindful of the severity of suppressing evidence, we must comply faithfully, nonetheless, with the safeguards provided to our citizens by the federal and state constitu-

---

**6.** Judge Lehrer also decided that the wiretaps had to be suppressed on the same grounds:

Applying the doctrine of fruit of the poisonous tree, I have examined very carefully the wiretaps to determine if an independent basis exists for the probable cause in the wiretaps exclusive of the Pen Register. And while I think there might be some basis in consideration of all of the factors which I have considered, I find that the three wiretaps also lack probable cause. (Record, pp. 455a–456a.)

tions. We vacate the order of the Superior Court and reinstate the decision of the suppression court below.

NIX, C.J., and FLAHERTY, J., concur in the result.

McDERMOTT, J., files a dissenting opinion.

McDERMOTT, Justice, dissenting.

With a flash of brilliance that is the exclusive province of hindsight, the majority holds that the issuing authority in this case fell into error by accepting and applying a clear holding of the U.S. Supreme Court that pen registers do not require probable cause. *Now* that the majority holds that probable cause is required for pen registers in this Commonwealth they find it inexcusable that others, lacking their authority, and their gifts of discernment, relied on the holding and analysis of the Supreme Court. The majority, in an abundance of good will, go beyond what the Supreme Court of the United States considers adequate protection of a citizen's right to use a telephone, and now hold as a Pennsylvania *constitutional* right that who one calls cannot be questioned without probable cause that he is committing a criminal use. I might agree that the legislature can prohibit pen registers without probable cause, but I cannot agree that the legislature ought to be prohibited from doing so as unconstitutional under the majority opinion. Certainly its uses can be enrounded with sufficient protection short of total constitutional defect. The magics of electronic communication may not prove a blessing on all occasions. We have much yet to learn and perhaps much to bear. We should not slam a constitutional door shut until we know where the fire will start next time. To come to their point the majority dribble through "retroactivity" raising uncertainties of what the law is at the present time. But more, much more than that, they cannot, will not, say whether there is a "good faith" exception extant or possible in Pennsylvania. One can see, however, that if it is not "good faith" to follow a holding of the Supreme Court of the United States before it is examined by the factitious logic of hindsight, there is not and cannot be such an exception.

The refusal of the majority to accept the analysis of the Superior Court that this is an appropriate case for a "good faith" exception is not a good faith mistake of their retroactive logic, it is a labored effort to avoid common sense and keep an open field for better crimes to come. This case will prove a major slipping ground for any analysis of "good faith" that is not a construct of whim, absurdity or repentance.

* This decision was considered and rendered prior to March 7, 1989.